

FILED
JAN 14 2025
JUDGE MANISH S. SHAH
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ROBERT L. MURRAY, JR.

No. 22 CR 643

Judge Manish S. Shah

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant ROBERT L. MURRAY, JR., and his attorney, HOLLY N. BLAINE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Plea Agreement have agreed upon the following:

### Charges in this Case

2. The indictment in this case charges defendant with four counts of wire fraud, in violation of Title 18, United States Code, Section 1343.

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Four of the indictment, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

**Factual Basis**

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Four of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than in or about the fall of 2020, and continuing through 2021, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant devised and intended to devise a scheme to defraud and to obtain money from individual investors, including residents of the Northern District of Illinois, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1343.

*Background*

Defendant, a veteran of the United States Navy, achieved the rank of a Chief Petty Officer. After his retirement from the Navy, defendant was unemployed, occasionally trading securities online, from his residence. Defendant founded a limited liability company, which he called "Deep Dive Strategies, LLC," to raise funds from investors. Defendant set up a bank account in the name of Deep Dive Strategies, LLC, to receive deposits of funds from interested investors, and a corresponding trading account at an online brokerage, to conduct trades with money raised from them.

Defendant portrayed himself on certain social media platforms and groups as a skilled, successful options trader with an effective strategy and algorithm for

trading securities. Defendant's audience included retired and active-duty members of the Navy who shared an interest in securities trading and, in particular, options trading.

Defendant used those social media platforms and groups to solicit investors for his new investment fund (Deep Dive Strategies, LLC), initially offering 100 membership shares of 1% each, at a price of $5,000 per share, for a total investment capitalization of $500,000.

Defendant made certain representations and promises in his social media posts, in his emails, and in his written offering materials to prospective investors, including that:

    a.    funds contributed by investors would be used solely to invest in publicly traded securities and to pay necessary business expenses (not to exceed 2% of the investment fund's value) incurred in administering the fund over the course of the ensuing calendar year;

    b.    defendant, as the exclusive manager of the fund, would be entitled to a performance fee not to exceed 20% of any net trading profits earned during the year;

    c.    he would not receive a performance fee in the event of a net trading loss; and

    d.    he would make information available to investors concerning their respective accounts during the calendar year.

Beginning in the fall of 2020, defendant raised over $350,000 from more than forty investors. Defendant caused those investor-funds to be deposited into his Deep Dive Strategies bank account.

### *Misappropriation of Investor Funds*

Defendant did not invest or trade with all of the funds provided to him by the investors, as he had led them to believe in his offering materials, emails, and social media posts. Instead, defendant kept a portion of investors' funds in the Deep Dive Strategies bank account, without transferring their funds to the trading account through which he otherwise would have been able to make investments and conduct trades.

Defendant misappropriated investor-funds from the Deep Dive Strategies bank account by making cash withdrawals, writing checks and using the account debit card to pay personal expenses of himself and his girlfriend, including shopping, restaurant, and travel expenses unrelated to the business of Deep Dive Strategies. Defendant also misappropriated investor-funds from the Deep Dive Strategies bank account by transferring money from that account to his own personal bank accounts, which he then used to pay various personal expenses.

Having misappropriated and spent a portion of the investors' funds, defendant did not use all of their funds to trade securities (less administrative fees), as he had promised to do in his offering materials. With the investor-funds that defendant did

4

transfer to his Deep Dive Strategies trading account, defendant lost most of those funds by trading a highly risky meme stock (GameStop).

Defendant failed to inform victim-investors that he had commingled and used a significant portion of their funds to pay personal expenses and that he had lost the rest of their funds as a result of short-term, high-risk trades. Defendant also disregarded or refused requests from investors for an accounting of their investment funds, and failed to send out monthly emails to all members with an update on the company's status and financial information as he had promised to do, in an attempt to conceal his misappropriation of investor-funds. Defendant failed to return investor-funds when asked to do so.

As a result of defendant's false and fraudulent representations, promises, acts, and omissions, victim-investors incurred financial losses on funds that they had entrusted to defendant to invest on their behalf.

For the purpose of executing the scheme described above, on or about December 27, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email to victim investors, including residents of the Northern District of Illinois, in which he welcomed them to "the Deep Dive Strategies email group" and made certain promises and representations regarding the intended use of investor funds and future business activities.

**Maximum Statutory Penalties**

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum term of imprisonment of twenty years; a maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a maximum term of supervised release of three years.

    b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

    c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pleaded guilty, in addition to any other penalty or restitution order imposed by the Court.

**Sentencing Guidelines Calculations**

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guideline range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other

6

correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the 2023 Guidelines Manual.

b. **Offense Level Calculations**.

i. Pursuant to Guideline § 2B1.1(a)(1), the base offense level is 7.

ii. It is the government's position that the base offense level should be increased by 8 levels pursuant to Guideline § 2B1.1(b)(1)(E) because the amount of the loss is more than $95,000, but not more than $150,000. Defendant reserves the right to contest the government's loss calculation.

iii. The offense level is increased by an additional 2 levels pursuant to Guideline § 2B1.1(b)(2)(A)(i) because the offense involved more than 10 victims.

7

    iv. It is the government's position that the offense level should be increased by an additional 2 levels pursuant to Guideline § 3B1.3 because defendant abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense. Defendant reserves the right to contest the application of this Guideline enhancement.

    v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    vi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.  **Criminal History Category.** Based on the facts now known to the government and stipulated below, defendant's criminal history points equal 2 and his criminal history category is II:

   i.  On or about February 15, 2019, defendant was convicted of obstructing official business (Canton Municipal Court, Ohio) and sentenced to 3 days in jail. Defendant receives no criminal history points for that sentence pursuant to Guideline § 4A1.2(c)(1).

   ii.  On or about February 26, 2019, defendant was convicted of resisting arrest (Massillon Municipal Court, Ohio) and sentenced to 90 days of imprisonment, of which 87 days were suspended. Defendant receives 1 criminal history point for that sentence pursuant to Guideline §§ 4A1.1(c) and 4A1.2(a)(3).

   iii.  On or about November 25, 2019, defendant was convicted of DUI (Canton Municipal Court, Ohio) and sentenced to 180 days of imprisonment, of which 177 days were suspended. Defendant receives 1 criminal history point for that sentence pursuant to Guideline §§ 4A1.1(c) and 4A1.2(a)(3).

   iv.  Defendant acknowledges that he may receive one or more additional criminal history points, and that his criminal history category may increase, if he is convicted of one or more of the assault charges currently pending against him in the District/Superior Court for the State of Alaska at Homer.

d.  **Anticipated Advisory Sentencing Guideline Range.** If the Court adopts the government's Guideline calculations as set forth above, the

anticipated offense level total will be 16 which, when combined with the anticipated criminal history category of II, will result in an anticipated advisory Sentencing Guideline range of 24-30 months of imprisonment, in addition to any term of supervised release, fine, and order of restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above Sentencing Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guideline calculations. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Office's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  10. Both parties expressly acknowledge that this Plea Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable

provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order him to make full restitution to the victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate a named recipient of restitution in the Judgment and Commitment Order, defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

17. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein (Count Four), the government will move to dismiss the remaining counts of the indictment (Counts One through Three).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18. This Plea Agreement is entirely voluntary and represents the entire agreement between the Acting United States Attorney and defendant regarding defendant's criminal liability in case 22 CR 643.

19. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

20. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest, or penalties from defendant or his company.

### Waiver of Rights

21. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

   a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights**. Defendant further understands that he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

22. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope,

and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Office. Defendant understands that providing false or incomplete information, or refusing to provide his financial information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and for enhancement of his sentence for obstruction of justice pursuant to Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of court.

25. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified

copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the tax returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

28. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may move to resentence defendant or require defendant's specific

17

performance of this Plea Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

30. Should the Court refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound to it.

31. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

32. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: 1/14/25

_____
Signed by JASON YONAN on behalf of
the Acting United States Attorney

_____
ROBERT L. MURRAY, JR.
Defendant

_____
BRIAN HAVEY
Assistant United States Attorney

_____
HOLLY N. BLAINE
Attorney for Defendant

19