UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 22 CR 643 |
| v. | ) | |
| | ) | Judge Manish S. Shah |
| ROBERT L. MURRAY, JR. | ) | |

**GOVERNMENT'S POSITION PAPER**
**AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, submits this memorandum to set forth the government's position with regard to the applicable Sentencing Guideline calculations and other pertinent sentencing factors.

## I. Introduction

This is an investment fraud case involving a Navy veteran, Robert Murray, who dabbled in securities trading and then decided to set up an investment fund following his retirement from the military. Murray raised more than $342,000 from dozens of active-duty service members, reservists, and other Navy veterans who shared his interest in trading and trusted him. Unfortunately, Murray mismanaged and misused a significant portion of their money (misusing victim funds to pay his personal expenses, among other things), and he lost the rest on an enormously bad trade. Murray got caught on the wrong side of the GameStop trading frenzy in early 2021, which forced his brokerage to liquidate his trading account. The result was a total loss of victim funds.

The SEC filed a civil action against Murray in the Northern District of Ohio (where he used to reside) in July 2022. The SEC case then was transferred to Chicago and stayed pending a resolution of this criminal case. *SEC v. Murray*, No. 22 CV 6684 (Judge Rowland).

This criminal case was filed in December 2022, when a grand jury returned an indictment charging Murray with four counts of wire fraud. On January 7, 2025, Murray entered a guilty plea to the charge in Count Four of the indictment. Murray's sentencing is scheduled for April 30, 2025.

## II. Sentencing Factors

As a matter of procedure, the sentencing judge must correctly calculate the Sentencing Guideline range, treat the Guidelines as advisory, consider the applicable § 3553(a) factors, select a sentence supported by the facts presented, and then adequately explain the selected sentence, including any variance or departure from the range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Annoreno*, 713 F.3d 352, 357 (7th Cir. 2013).

"[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. "[T]he farther down the judge goes the more important it is that he give cogent reasons for rejecting the thinking of the Sentencing Commission." *United States v. Smith*, 811 F.3d 907, 910 (7th Cir. 2016).

### A. Sentencing Guideline Calculations

The government does not object to any of the Probation Officer's Sentencing Guideline calculations, summarized below.

**1. Offense Level (16)**

The offense level total is 16, calculated as follows:

- Pursuant to Guideline § 2B1.1(a)(1), the base offense level is 7. *See Presentence Investigation Report (PSR)*, at 8 ¶31.

- The base offense level is increased by 8 levels pursuant to Guideline § 2B1.1(b)(1)(E) because of the amount of the loss (approximately $112,171) is more than $95,000, but not more than $150,000. *Id.* at 8 ¶32.

- The offense level is increased by an additional 2 levels pursuant to Guideline § 2B1.1(b)(2)(A)(i) because the offense involved more than 10 victims. *Id.* at 8 ¶33.

- The offense level is increased by an additional 2 levels pursuant to Guideline § 3B1.3 because Murray abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense. *Id.* at 9 ¶¶35-36.

- Murray's timely guilty plea, coupled with his acknowledgment of guilt, entitles him to a 3-level reduction for acceptance of responsibility pursuant to Guideline § 3E1.1. *Id.* at 9 ¶¶40-41.

**2. Criminal History Category (I)**

Murray's criminal history includes multiple convictions for which he receives a total of one criminal history point, which places him in criminal history category I. *Id.* at 10-11 ¶¶49-52.

3. **Sentencing Guideline Range (21-27 months)**

Combining an offense level total of 16 with a criminal history category of I results in an advisory Sentencing Guideline range of 21-27 months of imprisonment. *Id.* at 21 ¶105.

B. *Other Relevant § 3553 Factors*

By statute, district courts are obligated to consider the following additional sentencing factors, among others:

- the nature and circumstances of the offense (18 U.S.C. § 3553(a)(1));
- the history and characteristics of the defendant (*id.*); and
- the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (*id.* § 3553(a)(2)).

The government discusses the pertinent § 3553 factors below.

1. **Nature and Circumstances of the Offense**

Murray retired from the military in 2018. He stayed connected to the naval community through social media networks, including a Discord platform, a website that he managed, and a Facebook group of Navy chiefs (chief petty officers), including numerous active-duty service members, reservists, and veterans who were interested in investing.

4

Murray actively posted on these various social media platforms. He provided technical analysis and instruction on trading options. He also posted screenshots of his own successful trades, generating a following of interested investors.

Receiving favorable responses to his social media posts, Murray decided to set up an investment fund for those who wanted to be involved in the market but did not have the expertise, the time, or the interest to conduct their own trades. With the assistance of his stepfather, who is an attorney, Murray set up an LLC (called "Deep Dive Strategies, LLC") in 2020. In addition to setting up the LLC itself, Murray opened a company bank account and an online trading account.

Murray's initial plan was to raise $500,000, offering 1% shares in Deep Dive Strategies for a price of $5,000 per share, and to start trading with investor funds at the beginning of the new year, January 1, 2021. Murray fell short of his $500,000 goal, but he did succeed in raising more than $342,000—in amounts of about $5,000-$10,000 at a time, from more than forty different people across the country and serving overseas.

Murray began misappropriating investor funds shortly after receiving the first deposits into his Deep Dive Strategies bank account. He spent investor funds in several ways, including by transferring funds from the DDS bank account to his own personal bank accounts, withdrawing cash from the DDS account, and using a DDS debit card to pay personal expenses.

5

Of the total capital raised from investors, Murray spent about one-third of it and traded with about two-thirds of it. Murray made some profitable trades early on—at one point making over $50,000 in profits—but the investors never saw any of those profits because Murray did not share the profits with them. He proceeded to lose everything when he got crushed on the wrong side of GameStop momentum trade in January 2021. In sum, in less than six months, between about October 2020 and February 2021, Murray had lost all the investors' money through a combination of malinvestment and misappropriation.

Murray informed investors, via email, that he had suffered losses, but suggested that he could recover the losses, not disclosing that all their money was already gone. He blamed his online brokerage for forcing him to liquidate all his positions to cover the GameStop losing trade, but his complaints to the brokerage went nowhere. Before long, Murray stopped communicating with the investor group; he stopped responding to their inquiries and their requests for an accounting, for a redemption of their funds, and for a Schedule K-1 for tax reporting purposes. To this day, none of the investors have gotten any of their money back.

   2.   **History and Characteristics of the Defendant**

Murray is a 45-year-old father of three adult children, with whom he maintains a good relationship. *PSR*, at 15 ¶72. He has been married and divorced three times. *Id*. at 15-16 ¶¶72-74. Prior to his most recent arrest and detention, Murray was

6

residing alone in an apartment in Anchorage, Alaska, supporting himself on military retirement and disability income. *Id*. at 16, 20 ¶¶76, 98.

As a child, Murray was raised on military bases (his father was an Air Force pilot), before his parents divorced and he moved to the Chicago area with his mother. *Id*. at 15 ¶¶68-69. Following high school, Murray enlisted in the Navy, where he served as a medic for the next twenty years, retiring in 2018. *Id*. at 15, 19 ¶¶71, 97.

While in the military, Murray deployed to Iraq and Afghanistan, treating wounded soldiers and becoming disabled himself as a result of one or more traumatic brain injuries and associated psychological disorders. *Id*. at 17 ¶81. Murray was later diagnosed with a host of mental health disorders, including bipolar depression and PTSD, for which he has received in-patient and out-patient treatment for years. *Id*. at 17-19 ¶¶83-86, 88-89, 92-94.

Murray's troubles appear to have started at a young age, when he began accumulating concussions in sports (*id*. at 17 ¶81) and acquiring an arrest record as a teenager (i*d*. at 13 ¶¶61-62) and a disciplinary record in the military for non-violent and violent conduct (*id*. at 11-12 ¶¶53-54). Murray's criminal record reflects that he has been arrested at one time or another in five different states, including Hawaii (harassment/abuse family, *id*. at 14 ¶63); Florida (aggravated battery with a deadly weapon/domestic, *id*. at 14 ¶64; obstruct officer and battery, *id*. at 14 ¶65); Indiana (public intoxication, *id*. at 14 ¶66); Ohio (obstructing official business, *id*. at 10 ¶49; resisting arrest, *id*. at 11 ¶50; physical control while under the influence, *id*. at 11

7

¶51); and Alaska, where he now has three cases pending against him for assault in the second degree (*id*. at 12 ¶57); violation of a domestic violence protective order (*id*. at 12 ¶58); and operating under the influence (*id*. at 13 ¶59)—each of those three cases arising while Murray was on pretrial release in the instant case. Murray's ongoing criminal conduct prompted this Court to issue an arrest warrant (doc. 56, 57) and then to revoke Murray's pretrial release (doc. 61), after he violated the Court's most recent order to stay at home pending sentencing. *See PSR*, at 4 ¶5 (referencing multiple violation reports issued by Pretrial Services).

Murray's current financial situation, and his ability to repay his victims in the instant case, is unclear because he did not provide any financial information to the Probation Officer or sign a release so that the Probation Officer could obtain such information independently. *Id*. at 8-9, 20-21 ¶¶29, 40, 101-103.

### 3. Seriousness of the Offense/Deterrence/Protecting the Public

Among the other sentencing factors pertinent to this case are the need for the sentence to reflect the seriousness of the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2).

#### *a. Seriousness of the Offense*

In this case, as in many investment fraud cases, the victims are ordinary people or unsophisticated investors who entrusted money to the defendant to invest on their behalf. Murray abused that trust by spending their money on himself and/or

8

his girlfriend at the time. What makes matters worse is that Murray committed the offense against other military service members. The victims included many veterans and active-duty members of the military who did not make a lot of money. For example, one of the victims, who was on active duty, told the FBI agent that he had to save money for months in order to raise the $5,000 needed to invest in Murray's investment fund, and he believed that other investors were in the same boat. Another victim stated that he borrowed $5,000 from his brother in order to invest with Murray.

It was that mutual trust among current and former service members, and in particular, fellow Navy chiefs, which enabled Murray to raise money from so many people in this case—despite having no prior experience and training as an investment fund manager. As one of the victims put it:

> …The money is not the worst part. Robert used the inherent trust gained only by becoming a Chief Petty Officer in the U.S. Navy. This is something I hold dear in my heart. People lie. I get it. But Chiefs are supposed to always be honest, especially amongst one another. Being taken advantage of by one of your 'brothers' is a hard pill to swallow.

*Victim Impact Statement of CN* (attached to the *PSR*, at PDF p.55). Murray misled his fellow Navy chiefs into believing that he would be a good steward of their money, despite his history of erratic and abusive behavior, and mental health and substance abuse problems, which impaired his ability to carry on any stable, full-time employment.

9

### b. *Protecting the Public/Deterrence*

Murray has a disturbing history of abusing alcohol, abusing or threatening several former girlfriends (*PSR*, at 12-13, 16 ¶¶57-58, 75), violating court orders, and then resisting arrest. Murray's acts of domestic abuse, alcohol or other substance abuse, mental health problems, and resisting arrest are factors which, in combination, signal the need for a sentence to protect the public and to afford specific deterrence against future criminal conduct.

Murray's criminal record establishes at least four things: (1) he began accumulating arrests long before the instant case, meaning that this case did not constitute a one-time lapse in judgment by someone with an otherwise clean record; (2) his prior encounters with the criminal justice system, and any lenient sentences he received in those cases, did not deter him from committing the instant offense; (3) any mental health/substance abuse treatment, counseling, and medications provided to Murray in the past have not succeeded in stopping him from continuing to commit more crimes, or even mitigated or curtailed his criminal activity in the slightest degree; and (4) the conditions of pretrial release imposed here, and in Alaska, did not prevent Murray from committing new crimes while under court supervision. At this point, a stiff sentence is necessary to afford specific deterrence, because the leniency, patience, and tolerance extended to Murray in the past have failed again and again.

Setting aside the need for specific deterrence, a substantial sentence also is warranted to promote general deterrence. "By including general deterrence as a

10

required consideration, Congress embraced the idea that criminal sentences influence behavior in society. The idea of general deterrence, put simply, is that the longer the sentence, the more it will discourage similar criminal conduct by others." *United States v. Arroyo*, 75 F.4th 705, 708 (7th Cir. 2023) (citing *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007)).

"As the legislative history of the adoption of § 3553 demonstrates, Congress viewed deterrence as 'particularly important in the area of white collar crime.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259). After all, "[w]hite collar criminals often calculate the financial gain and risk of loss of their crimes, and an overly lenient sentence sends the message that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." *United States v. Howard*, 28 F.4th 180, 209 (11th Cir. 2022) (internal quotation marks omitted); *see also United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) ("endors[ing] the idea that white-collar criminals act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity. They are, therefore, prime candidates for general deterrence") (internal quotation marks and citation omitted); *United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) ("[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence") (internal quotation marks omitted); *United States*

11

*v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("[c]onsiderations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it").

### III. The Government's Recommendation

#### A. *Imprisonment (27 months)*

For all the reasons discussed above, the government respectfully recommends that the Court impose a sentence which includes a term of imprisonment at the upper end of the Sentencing Guideline range: 27 months of imprisonment.

A high-end sentence would be "sufficient, but not greater than necessary," to satisfy the pertinent § 3553 sentencing factors, that is, to reflect the seriousness of the offense, to protect the public, and to afford deterrence (18 U.S.C. § 3553(a)(2)) to Murray and to others—whether they be financial professionals or unlicensed securities traders/advisors operating online—who may be tempted to steal from clients and retail investors in the future. Such a sentence will impress upon the public in general, and Murray in particular, that a misappropriation of funds from retail investors and, in particular, from military service members, will be treated with an appropriate level of seriousness.

As for any mitigating circumstances, Murray had a laudable career of serving the country for many years, including in combat, for which he received a number of awards. *PSR*, at 20 ¶100. As a result of his military service, Murray became disabled,

12

in the form of a significant, chronic mental health condition—a condition which likely has been exacerbated by his history of substance abuse. That said, these same mental health/substance abuse issues were prevalent in Murray's life prior to his commission of the instant offense. Murray's mental condition did not prevent him from raising funds and trading securities in the first place and, therefore, his mental condition should not be used as a basis for excusing or avoiding punishment for having committed fraud. Likewise, Murray's military service, while praiseworthy, cannot be used forever as a pass to continue to commit crimes, especially when the victims are themselves members of the military. Given the failures of any mental health and substance abuse treatment offered to Murray up to this point in time, deterrence and protecting the public are now a priority.

      Balancing the mitigating circumstances in this case, including Murray's prior military service and significant mental health issues, against the aggravating circumstances, including Murray's criminal record, the fact that he repeatedly committed violations of the terms of his federal and state court supervision (both here and in Alaska), and his victimization of military service members in this case, a sentence at the high end of the applicable Sentencing Guideline range would be appropriate, fair, and reasonable.

13

### B.     *Supervised Release (3 years)*

Any term of imprisonment imposed by the Court in this case should be followed by a period of supervised release. The government recommends that the Court impose the maximum period of supervised release, three years, to provide the maximum opportunity to supervise Murray's efforts to pay restitution and to facilitate whatever mental health or substance abuse counseling and treatment may be appropriate.

The government has no objection to any of the conditions of supervised release recommended by the Probation Officer. *PSR*, at 21-27.

### C.     *Restitution ($112,171.71)*

Murray's sentence also should include an order of restitution, requiring him to pay restitution to the victims in the total amount of $112,171.71. The government has tendered a Victim Import Spreadsheet to the Probation Officer, listing each victim, with the amounts of the total loss prorated to each victim.

## IV. Conclusion

In sum, the government respectfully recommends that the Court impose a sentence which includes the following terms:

1. a 27-month term of imprisonment;

2. a three-year term of supervised release to follow any term of imprisonment imposed by the Court; and

3. an order of restitution in the amount of $112,171.71.

Upon the imposition of sentence on Count Four of the indictment, the government shall move to dismiss the remaining counts of the indictment (Counts One through Three).

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/Brian Havey*
BRIAN HAVEY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 469-6305
brian.havey@usdoj.gov