UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **United States of America,** | |
| Plaintiff, | |
| v. | No. 22 CR 643 |
| **Robert L. Murray, Jr.**, | Judge Manish S. Shah |
| Defendant. | |

## Supplement to Defense Sentencing Memorandum

Defendant Robert Murray submits this supplement to his sentencing memorandum, which addresses his personal history and characteristics pursuant to 18 U.S.C. §3553(a).

Robert's early life was fairly normal, though he moved frequently as a young child, due to his father's service in the U.S. Air Force. After his parents' divorce, he grew up primarily in the Chicago area. He graduated early from Libertyville High School in 1998. While he was in high school, he participated in a program that allowed students to earn class credit for volunteering with local organizations. Robert chose to become an Emergency Medical Technician (EMT) through the Zion Fire department because he enjoyed learning medical skills to help the ill or injured. At the time, Robert intended to pursue a career in firefighting, hoping to eventually become a smokejumper fighting wildfires in remote areas; however, his plans changed as he learned more about military service from the firefighters he worked with. He enlisted in the U.S. Navy, and was inspired to become a corpsman to continue providing emergency medical treatment to sailors and Marines injured in combat. Some corpsmen work in hospitals or on naval ships, providing routine medical care, however, Navy corpsmen are also the primary emergency medical

staff attached to all Marine combat units in active combat zones. Because Marines operate in some of the most active and dangerous combat areas, corpsmen see and treat devastating combat injuries.

Robert deployed with Marine units in 2008 and 2010. During his deployments, he was involved in several improvised explosive device (IED) attacks, which caused concussions that were later diagnosed as traumatic brain injuries from the blast. He also spent part of his deployment with a Marine explosive ordinance disposal (EOD) unit, whose primary mission was destroying any explosives found in the area of operation, exposing Robert to more concussive blasts. Traumatic brain injuries are especially pernicious, because the damage isn't limited to the initial injury—the brain continues to deteriorate over time and can lead to early onset of conditions like Alzheimer's. Traumatic brain injuries are also cumulative—even small, less-severe initial injuries, like concussions, add up over time, and can cause severe cognitive deficits, progressive brain atrophy and chronic traumatic encephalopathy (CTE). A good example is professional football players. Many NFL players later diagnosed with CTE did not experience one severe TBI, instead, they experienced multiple minor concussions during their high school, college and professional careers, which accumulated into CTE at the end of their lives.

An example of Robert's TBI-related struggles is his failure to return financial documents to U.S. Probation for the PSR. Prior to his arrest, Robert attempted to return his completed financial forms to counsel several times, but was unable to remember how to attach a PDF to an email. Counsel then asked her paralegal, Adrienne Ku, to work with Robert on returning the financial documents using another method. Our office has an online client portal where clients can upload documents directly to their files. Ms. Ku spent an hour and a half over two separate

days trying to walk Robert through the upload process but was ultimately unable to get his documents. His frustration with himself was obvious when Ms. Ku was working with him. She recalls him repeating to himself that he knew he knew how to attach a PDF to an email or upload it, but his brain was unable to access that information. Robert was arrested before he could print and mail the documents to counsel.

Robert's mental health struggles also began after his return from his combat deployments. TBIs can trigger mental health conditions, like bipolar disorder, anxiety and depression. They can also exacerbate post-traumatic stress disorder (PTSD). Robert has checked himself into treatment for both his mental health and substance abuse issues on several occasions, however, with this constellation of problems and symptoms, he faces a difficult path forward. He recognizes that he needs additional treatment, and he intends to check himself into the Hines VA Hospital in Chicago for inpatient treatment on his release from incarceration.

People with mental illness are overrepresented in prisons and jails across the nation and frequently receive no or substandard care. According to the National Alliance on Mental Illness (NAMI), 37% of people in state and federal prisons have a documented history of mental illness, which is double the prevalence of people with mental illnesses in the overall adult population[1]. Of those incarcerated people, NAMI found that:

> Despite court mandates, there is a significant lack of access to adequate mental health care in incarcerated settings. About three in five people (**63%**) with a history of mental illness do not receive mental health treatment while incarcerated in state and federal prisons. It is also challenging for people to remain on treatment regimens once incarcerated. In fact, more than **50%** of individuals who were taking medication for mental health conditions at admission did not continue to receive their medication once in prison.
>
> People with mental illness often face challenges to navigating life in a jail or prison. Behaviors related to their symptoms can put them at risk for

---

[1] NAMI, Mental Health Treatment While Incarcerated

- 3 -
DEFENSE SENTENCING MEMORANDUM

consequences of violating facility rules, such as solitary confinement or being barred from participating in programming.

The Bureau of Justice Statistics estimated in 2016 that there were over 100,000 incarcerated veterans and that approximately a quarter of those veterans served in Iraq or Afghanistan[2].

It is also abundantly clear from his arrest record that the brain injuries and mental health conditions he experiences contributed to not only this conviction but his prior arrests and convictions as well. Prior to his combat deployments, he had two minor arrests as a juvenile, and a minor harassment charge involving his ex-wife that was dismissed. After his deployments, his arrest record makes clear that he was struggling with the effects of his TBIs and PTSD, leading him to self-medicate with alcohol and other substances.

As a result of his TBIs and mental health issues, Robert is classified as 100% disabled by the Department of Veterans Affairs. A 100% disability rating is given to veterans suffering from documented mental health conditions which result in:

> Total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.[3]

Substance abuse is another well-documented struggle that people suffering from TBIs and PTSD experience. Among Operation Enduring Freedom (OEF – Afghanistan theater, 2001-present) and Operation Iraqi Freedom (OIF) – Iraq theater, 2003-2011) veterans who were diagnosed with a substance use disorder, 82 to 93% were also diagnosed with a mental health disorder. This correlation highlights Robert's need for continuous mental health treatment. When he has

---

[2] Bureau of Justice Statistics, Survey of Prison Inmates, 2016. Veterans in Prison
[3] VA Mental Health Rating Chart Explained

access to consistent mental heath treatment and medications, he is not abusing substances.

The government argues that a time served sentence with three years of supervised release is equivalent to no punishment for Robert. This statement not only ignores the obvious punishment of even a short period of incarceration for a person suffering from TBI and mental illness, but also ignores the collateral consequences to Robert and the mandate inherent in the list of factors contained in §3553(a) that punishment is not the only consideration.

Robert has already suffered punishment. He has been incarcerated since March 7, and as a result, he is now homeless. Because he has been unable to pay his bills during his incarceration, he lost his apartment. He also lost all of his belongings that were in his apartment. He stands before the court today owning only the clothing he was wearing when he was arrested, and perhaps a vehicle, which has been impounded. He will lose the vehicle if he cannot pay the impound fees which are continuing to accumulate. He has to start life over, at 45, with nothing, and in substantial debt to the victim investors. Robert will also be ordered to pay over $100,000 in restitution. If he loses his retirement and disability income due to a period of incarceration, he may remain homeless.

Respectfully Submitted,

/s/ Holly N. Blaine
Attorney for Robert L. Murray, Jr.

Holly N. Blaine
BLAINE & VANZANT, LLP
922 Davis Street
Evanston, Illinois 60201
(312) 788-7584
hnb@blainevanzant.com